UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LAUREEN L.,

               Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

Case No. C20-977-MLP

ORDER

## I.    INTRODUCTION

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in assessing certain medical opinions and in discounting Plaintiff's testimony. (Dkt. # 24 at 1.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II.    BACKGROUND

Plaintiff was born in 1966, has bachelor's degrees in social work and nursing, and has worked as a case manager and social worker. AR at 47, 206. Plaintiff was last gainfully employed in April 2016. *Id.* at 206.

ORDER - 1

In July 2016, Plaintiff applied for benefits, alleging disability as of April 1, 2016.[1] AR at 193-94. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 121-23, 127-35. After the ALJ conducted a hearing in September 2018 (*id.* at 39-88), the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 21-33.

Utilizing the five-step disability evaluation process,[2] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since the amended alleged onset date.

Step two: Plaintiff has the following severe impairments: degenerative disc disease, carpal tunnel syndrome, and a vestibular disorder.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[3]

Residual Functional Capacity ("RFC"): Plaintiff can perform light work with additional limitations: she can sit, stand, and walk for six hours each in an eight-hour workday. She can occasionally stoop, crouch, crawl, balance, or kneel. She can never climb ladders, ropes, or scaffolds. She can occasionally perform bilateral overhead reaching. She must avoid concentrated exposure to pulmonary irritants and workplace hazards such as heights and dangerous moving machinery. She can adapt to occasional workplace changes. She needs access to a bathroom on the same floor for use during usual and customary breaks.

Step four: Plaintiff can perform past relevant work and is therefore not disabled.

Step five: In the alternative, as there are also other jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR at 21-33.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 7-12. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

---

[1] At the administrative hearing, Plaintiff amended her alleged onset date to March 1, 2017. AR at 44.
[2] 20 C.F.R. § 404.1520.
[3] 20 C.F.R. Part 404, Subpart P, Appendix 1.

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

### IV. DISCUSSION

**A.     The ALJ Did Not Err in Assessing Medical Opinion Evidence**

Plaintiff argues that the ALJ erred in discounting a treating physician's opinion, and also erred in crediting the opinions of the State agency non-examining consultants. The Court will consider each disputed opinion in turn.

1. *Legal Standards*[4]

Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining doctor's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

2. *Alison Overland, M.D.*

Dr. Overland, a treating physician, completed a form opinion describing Plaintiff's symptoms and limitations in August 2018. AR at 899-902. The ALJ summarized Dr. Overland's opinion and accorded it "little probative value" because: (1) Dr. Overland did not explain the basis for the boxes she checked on the form opinion; (2) Dr. Overland appears to have simply selected the most limiting options on the form to increase Plaintiff's likelihood of receiving benefits, and appears to have relied solely on Plaintiff's self-reporting as the basis for her opinion; (3) Dr. Overland's opinion is inconsistent with her treatment notes showing essentially normal physical examination findings, as well as inconsistent with Plaintiff's self-reported ability to walk a quarter-mile several times per day for exercise; and (4) Dr. Overland's opinion is inconsistent with other medical evidence showing essentially normal physical findings. *Id*. at 31.

Plaintiff argues that these reasons are not specific and legitimate. Plaintiff does not dispute that Dr. Overland's opinion is unexplained, but argues that when it is read in the context of Dr. Overland's treatment notes, it is clear that the opinion is consistent with her treatment

---

[4] Because Plaintiff applied for disability before March 27, 2017, the regulations set forth in 20 C.F.R. § 404.1527 apply to the ALJ's consideration of medical opinions.

notes as well as other treatment notes in the record, contrary to the ALJ's reasoning. (Dkt. # 24 at 4-7.) Plaintiff points to abnormal physical examination findings contained in Dr. Overland's treatment notes and the notes of other providers, which Plaintiff argues undercuts the ALJ's finding that the treatment record shows "essentially normal physical examinations." (Dkt. # 24 at 5 (citing AR at 594-95 (November 2017 examination), 997-99 (January and August 2018 notes), 1004 (April 2017 note)).)

Plaintiff has indeed identified some abnormal findings contained in the treatment notes, but has not shown error in the ALJ's decision because the ALJ acknowledged those findings and indicated that nonetheless, testing showed that Plaintiff's extremity strength and sensation were found to be normal after her surgery. AR at 29-30 (citing *id.* at 422-23, 491, 503-04, 532-33, 538, 545, 594, 666, 679, 683, 688, 694, 700-01, 907, 910, 934, 990, 997, 999, 1002, 1004, 1399-1400). The ALJ also noted that some of these examinations referenced gait problems earlier on, but that Plaintiff's gait was observed to be normal by June 2018. *Id.* at 29-30 (citing *id.* at 679). Because the ALJ acknowledged the abnormal examination findings emphasized by Plaintiff, and reasonably explained why the treatment notes as a whole were nonetheless "essentially" normal, Plaintiff has not shown that the ALJ erred in assessing the treatment record or in finding that it was inconsistent with the limitations described in Dr. Overland's opinion.

Furthermore, Plaintiff has not shown that the ALJ erred in finding Dr. Overland's opinion to be unexplained; even when considering the opinion in conjunction with the treatment record, Plaintiff has not shown that the treatment record necessarily corroborates the limitations described in the opinion. This portion of the ALJ's reasoning is specific, legitimate, and supported by substantial evidence. *See Molina*, 674 F.3d at 1111 ("[T]he ALJ may 'permissibly reject[ ] . . . check-off reports that [do] not contain any explanation of the bases of their

conclusions.'"); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record); *Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

To the extent that the ALJ also suggested that Dr. Overland overemphasized Plaintiff's limitations in order to increase her chances of receiving disability (AR at 31), this finding is speculative and not supported by substantial evidence. The ALJ also failed to cite any evidence supporting her finding that Dr. Overland relied solely on Plaintiff's self-report as the foundation for her opinion. *Id*. Because the ALJ provided other legally sufficient reasons to discount Dr. Overland's opinion, however, these erroneous reasons are harmless, and the Court does not disturb the ALJ's assessment of Dr. Overland's opinion.

### 3. *State Agency Opinions*

The State agency consultants assessed Plaintiff's physical limitations in April 2017 and August 2017. AR at 97-100, 114-16. The ALJ's RFC assessment is consistent with the State agency physical opinions although it is more restrictive, but the ALJ did not explicitly weigh the State agency physical opinions in the decision.

Plaintiff argues that the ALJ essentially afforded controlling weight to the State agency physical opinions, which is inappropriate in light of the timing of the consultants' review (before or shortly after the amended alleged onset date) relative to most of the adjudicated period. (Dkt. # 24 at 7-8.) Plaintiff contends that the State agency consultants did not have access to evidence showing that Plaintiff's symptoms were caused by ossification of the posterior longitudinal ligament ("OPLL"), which was not diagnosed until November 2017. (Dkt. # 24 at 8 (citing AR at

935).)

This argument is not persuasive. As noted by the Commissioner (dkt. # 25 at 12), OPLL is mentioned in earlier treatment records from 2016 (AR at 312, 435-36, 571-73), which the State agency consultants reviewed. On reply, Plaintiff counters that although her providers were aware of her OPLL at earlier points, it was not discovered until November 2017 that Plaintiff continued to experience ongoing compression post-surgery due to OPLL. (Dkt. # 26 at 4 (citing AR at 935, 998).) This treatment note, when viewed in its entirety, does not bolster Plaintiff's argument: she fails to mention that the neurosurgeon who confirmed Plaintiff's OPLL post-surgery recommended that Plaintiff undergo a CT myelogram to clarify whether further decompression could provide improvement of her symptoms (AR at 935); Plaintiff declined to follow this recommendation, however, because her symptoms were stable at that time and she would consider it if her symptoms worsened. *Id*. at 998. This evidence, in its entirety, does not undermine the State agency opinions (*see id*. at 94-95 (State agency opinion noting Plaintiff's symptoms had not entirely resolved post-surgery), 116 (State agency opinion noting some residual symptoms post-surgery)).

Moreover, because Plaintiff has not shown that the State agency opinions are contradicted by the entire record, she has failed to demonstrate error in the ALJ's apparent crediting of these opinions. *See Andrews*, 53 F.3d at 1041 ("[T]he report of a nonexamining, nontreating physician need not be discounted when it 'is not contradicted by *all other evidence* in the record.'" (quoting *Magallanes*, 881 F.2d at 752 (emphasis in original))). Although Plaintiff argues that the State agency opinions could not serve as a reason to discount a medical opinion unless they are consistent with other evidence in the record (dkt. # 26 at 5 (citing *Thomas*, 278 F.3d at 957)), the ALJ did not cite the contrary State agency opinions as a reason to discount a

medical opinion. Accordingly, the Court finds no harmful legal error in the ALJ's decision pertaining to the State agency opinions.

**B.    The ALJ Did Not Harmfully Err in Discounting Plaintiff's Testimony**

The ALJ summarized Plaintiff's subjective allegations and explained that she discounted them because: (1) although Plaintiff described many disabling limitations, including disabling pain, those limitations were not corroborated in the treatment record and Plaintiff refused to treat her pain with anything other than over-the-counter medication and massage; and (2) Plaintiff's activities contradict her allegations of concentration and memory. AR at 28-31. Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). Plaintiff contends that the ALJ's reasons did not satisfy this standard, and the Court will assess the sufficiency of each reason in turn.

*1.    Inconsistency with the Treatment Record*

The ALJ identified several inconsistencies between Plaintiff's allegations and the treatment record. First, the ALJ found that some of Plaintiff's symptoms improved after her April 2016 surgery. AR at 29. Next, the ALJ contrasted Plaintiff's complaints of numbness in her extremities with evidence of normal sensation upon examination, and improvement in Plaintiff's gait to the point that the ALJ found that Plaintiff's continued use of a cane was not medically necessary. *Id*. at 29. The ALJ also noted that although Plaintiff alleged limited mobility, she also reported an ability to walk every day for exercise and jog short distances, and that she is able to stay mobile doing her daily activities. *Id*. at 30. The ALJ also cited evidence showing that Plaintiff's carpal tunnel syndrome was mild enough to not warrant surgery. *Id*. Lastly, the ALJ found that Plaintiff's allegations of disabling pain were contradicted by her refusal to treat her

pain with anything stronger than over-the-counter medication and massage. *Id*. The Court will address Plaintiff's challenges to these findings in turn.

### a. Improvement

Plaintiff argues that the ALJ erred in finding that Plaintiff improved after surgery, because some of the records indicate that some symptoms persisted. (Dkt. # 24 at 9-10.) There is substantial evidence in the record supporting the ALJ's finding of improvement (AR at 421, 503, 687, 907-08, 910, 912); the ALJ's RFC assessment includes significant restrictions and thus the ALJ's decision as a whole does not suggest that all of Plaintiff's symptoms entirely resolved post-surgery. *See id*. at 28. Plaintiff has therefore failed to show that the ALJ erred in finding that the record showed some improvement post-surgery.

Plaintiff also argues that the ALJ erred in failing to explicitly discuss the November 2017 neurosurgery note addressing Plaintiff's continued OPLL, which was discussed *supra*. (Dkt. # 24 at 10 (referencing AR at 935).) This treatment note does not reference any particular functional limitations that were discounted by the ALJ, and thus does not constitute significant, probative evidence rejected by the ALJ that must be discussed.[5] *See Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (holding that the ALJ "may not reject 'significant probative evidence' without explanation" (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984))).

### b. Gait

Plaintiff argues that the ALJ erred in relying on one treatment note indicating normal gait, when nearly all of the other notes referenced abnormal gait. (Dkt. # 24 at 11.) The ALJ

---

[5] Furthermore, as explained *supra*, the note in the context of that treatment note does not support Plaintiff's allegations of disabling pain, because Plaintiff declined to follow her neurosurgeon's recommendation for more imaging in light of her stable symptoms, and indicated she would consider it if her symptoms worsened. *See* AR at 935, 998. Another provider also recommended that imaging, which Plaintiff declined at that time as well. *Id*. at 906-08.

acknowledged some evidence of gait abnormalities earlier in the adjudicated period, but found that Plaintiff's gait improved to the point that it normalized by June 2018. AR at 29 (citing *id.* at 679). In challenging this finding, Plaintiff cites no evidence describing abnormal gait that post-dates June 2018. (Dkt. # 24 at 11 (citing AR at 594, 934, 976, 999, 1001, 1004, 1007-08)).) Plaintiff has therefore not shown that the ALJ's finding regarding Plaintiff's gait improvement is inaccurate.

The ALJ also cited treatment notes mentioning Plaintiff's ability to walk daily for exercise and jog short distances as evidence contradicting her own description of gait problems. *See* AR at 71-72 (Plaintiff's hearing testimony), 666 (able to jog short distances ), 1001 (walking 30 minutes per day), 1002 (physician recommends continuing with daily walking). One of these treatment notes suggests that Plaintiff needed to use a walking stick on her daily walks, however, and Plaintiff testified to the same at the hearing, which would not contradict her allegation of limited mobility without an assistive device. *See id.* at 57-58, 1001. This component of the ALJ's findings regarding Plaintiff's gait is neither convincing nor supported by substantial evidence, and is therefore erroneous. This error is harmless, however, because the ALJ cited other examples of inconsistencies between Plaintiff's allegations and the medical record that remain valid despite this error. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

                c.        <u>Pain Management</u>

The ALJ noted that Plaintiff opted to manage her pain via over-the-counter medication and massage therapy, rather than prescription pain medication. AR at 30 (citing *id.* at 997). Plaintiff argues that the record shows that she tried one prescription pain medication, gabapentin, but did not find it helpful and/or experienced side effects (dkt. # 24 at 13 (citing AR at 490,

996)), but this evidence does not contradict the evidence cited by the ALJ showing that Plaintiff reported stable, "comfortable" symptoms while treating her pain with over-the-counter Aleve and massage. *See* AR at 998 ("Massage helps though most significant benefit is short term, if she skips a session pain does increase. [I]t seems to be maintaining her at a comfortable level. Taking aleve PRN only, doesn't want to use other medications. Mobilizing and doing activity daily."). Other evidence also suggests Plaintiff's preference for avoiding pain medication. *See* AR at 997 ("Discussed medication for pain, [patient] not interested; discussed the vicious cycle of impaired sleep, mood and pain, all worsening the others and cont[r]ibute to worsening fatigue; encouraged her to [follow up] with sleep study"), 1009 ("She prefers not to take much for pain. Dr. Messerli prescribes some gabapentin, which she has not yet tried.").

Even if Plaintiff did experience some unspecified side effects with gabapentin, that does not fully explain why she refuses to take any other pain medications and instead reports improvement with conservative treatment. The ALJ did not err in contrasting Plaintiff's reports of disabling pain with her refusal to treat her pain with prescription medication. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (ALJ permissibly inferred that the claimant's pain was not as disabling as alleged "in light of the fact that he did not seek an aggressive treatment program and did not seek an alternative or more-tailored treatment program after he stopped taking an effective medication due to mild side effects.").

d. <u>Carpal Tunnel Syndrome</u>

The ALJ noted that Plaintiff's carpal tunnel syndrome was found to be mild and not warranting surgery. AR at 30. Plaintiff argues that this evidence is irrelevant because she had not alleged that her carpal tunnel syndrome was more severe. (Dkt. # 24 at 14.) The ALJ did not link her findings regarding the severity of Plaintiff's carpal tunnel syndrome to the discounting of any

particular limitation; in fact, the ALJ found Plaintiff's carpal tunnel syndrome to be severe at step two. AR at 24. Thus, the ALJ's finding regarding carpal tunnel syndrome does not appear to be a basis upon which the ALJ discounted Plaintiff's allegations, and thus Plaintiff has not shown harm flowing from this finding.

### 2. *Activities*

The ALJ noted that although Plaintiff alleged that her symptoms significantly interfere with her ability to maintain concentration and attention, her activities suggest otherwise. AR at 30-31. Specifically, the ALJ cited *inter alia* Plaintiff's ability to respond to questioning at the hearing; engage in caregiving for her elderly mother and five-year-old niece, as well as for her sister after a car accident; use a computer; manage her finances; prepare meals; and socialize with family and friends. *Id*. The ALJ also noted that Plaintiff's mental status examinations were normal and none of her treatment notes documented any deficits in cognition or memory. *Id*.

Plaintiff argues that none of the activities the ALJ cited contradict her allegations of physical limitations (dkt. # 24 at 15-18), which may be true, but the ALJ cited these activities as inconsistent with Plaintiff's allegations of concentration and attention deficits. *See* AR at 30-31. The ALJ cited evidence of Plaintiff's activities that is reasonably inconsistent with allegations of significant cognitive deficits (*see, e.g., id*. at 216, 232), and thus did not err in relying on Plaintiff's activities as one reason (along with inconsistent objective evidence) to discount her mental allegations. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills").

Because the ALJ provided multiple clear and convincing reasons to discount Plaintiff's subjective testimony, the Court affirms this portion of the ALJ's decision.

# V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 7th day of June, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge